UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
ex rel. MELISSA HIGGINS,

   Plaintiffs,

v.                                  Case No.: 8:14-cv-2769-T-33AEP

HEALTHSOUTH CORPORATION,

   Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant HealthSouth Corporation's Motion to Dismiss (Doc. # 104), filed on July 30, 2019. Plaintiff Melissa Higgins filed a response in opposition (Doc. # 113) on August 13, 2019. HealthSouth filed a reply in support of its Motion (Doc. # 122) on August 23, 2019. For the reasons discussed below, the Motion is granted.

I.  **Background**

In her Amended Complaint, Higgins alleges that her former employer, HealthSouth, defrauded the United States by generating improper fees and fraudulent billings to Medicare, Medicaid, and other public and private health insurers. (Doc. # 88 at ¶¶ 2, 30, 87-164, 194). She alleges that HealthSouth defrauded the government by knowingly admitting and

1

readmitting patients to its inpatient rehabilitation facilities that did not meet certain federal criteria and then billing the government for unnecessary services provided to those patients. (Id. at ¶¶ 2, 13-24, 100-64).

According to the Amended Complaint, Higgins formerly worked for HealthSouth as the local and regional Director of Therapy Operations in Arlington, Texas. (Id. at ¶¶ 165-68). When she raised concerns regarding the alleged fraudulent billing practices within the corporation, she was stripped of her responsibilities and then forced to resign in 2011. (Id. at ¶¶ 31-34, 172-86).

In July 2012, Higgins filed the instant qui tam action against HealthSouth, raising several claims on behalf of the United States under the False Claims Act, 31 U.S.C. § 3729, et seq., and a retaliation claim under the FCA pursuant to 31 U.S.C. § 3730(h). (Doc. # 2 at ¶¶ 161-75).

On April 1, 2019, the United States notified the Court that it would not be intervening in the case at that time. (Doc. # 73). Accordingly, the Court lifted the seal from the Complaint and directed that it be served upon HealthSouth. (Doc. # 74).

On June 24, 2019, the United States notified the Court that it would intervene in this action for the purposes of

settlement. (Doc. # 81). Following the parties' filing of a Joint Stipulation of Dismissal, this Court dismissed Higgins's federal qui tam claims with prejudice, but it retained jurisdiction to resolve Higgins's claim for retaliation under 31 U.S.C. § 3730(h), as well as any claims for attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d). (Doc. # 87).

Higgins thereafter filed her Amended Complaint, in which she raises two claims — a retaliation claim under the FCA, 31 U.S.C. § 3730(h) (Count I), and a claim for attorneys' fees, expenses, and costs under 31 U.S.C. § 3730(d) and (h) (Count II). (Doc. # 88 at ¶¶ 198-207). In addition, Higgins filed a motion for attorneys' fees, seeking attorneys' fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d). (Doc. # 89). That motion is currently pending.

HealthSouth now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Count I and those portions of Count II that relate to the retaliation claim in Count I. (Doc. # 104 at 1). According to HealthSouth, Higgins's claims are barred by the waiver and release contained in the Severance Agreement she signed in connection with the termination of her employment. HealthSouth appended a copy of the Severance Agreement to its Motion to Dismiss. (Doc.

# 104-1). Higgins responded, and HealthSouth replied. (Doc. ## 113, 122). The Motion is now ripe for review.

## II. Legal Standard

When considering a motion to dismiss brought under Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). In addition, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Generally, if matters outside the pleadings are presented as part of a motion to dismiss under Rule 12(b)(6), the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). There is, however, an exception to this rule. "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); see also Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").

Similarly, although the existence of an affirmative defense usually will not support a Rule 12(b)(6) motion, a district court may dismiss a complaint when the complaint's "own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." Fortner v. Thomas, 983 F.2d 1024, 1028 (11th Cir. 1993) (quoting Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984)); see also Banco

5

Popular N. Am. v. M/V Triple Play, No. 12-20188-CIV-GRAHAM, 2012 WL 12885237, at 82 (S.D. Fla. Apr. 11, 2012) (explaining that waiver is typically an affirmative defense that may be raised in a motion to dismiss only if it is apparent on the face of the complaint).

III. **Analysis**

As a preliminary matter, the parties do not dispute that the Severance Agreement is central to the plaintiff's claim and is authentic. See SFM Holdings, 600 F.3d at 1337. Accordingly, the Court will consider the Severance Agreement in ruling upon HealthSouth's Motion.

    A. **The Terms of the Severance Agreement**

The Severance Agreement entered into between Higgins and her former employer provides that the company would pay Higgins the following: (1) two months' salary, (2) a lump sum payment equal to all unused paid time off that Higgins had accrued, and (3) a two-month continuation of Higgins's vision, health care, medical, and dental insurance benefits with the company. (Doc. # 104-1 at 1-2). In exchange, Higgins agreed to:

> irrevocably and unconditionally release[] the Company and its parents (including, but not limited to, . . . HealthSouth Corporation) . . . from any and all complaints, claims, liabilities, obligations, promises, agreements, causes of

> action, rights, costs, losses, debts and expenses of any nature whatsoever, known or unknown, which Ms. Higgins . . . ever had, now have, or hereafter can, will or may have . . . by reason of any matter, fact or cause whatsoever against the Company or any of the other Company Releasees from the beginning of time to the date upon which Ms. Higgins signs this Agreement.

(Id. at 2-3). The release explicitly includes "all claims arising out of, or relating to, Ms. Higgins' employment with the Company and the termination of Ms. Higgins' employment with the Company, including . . . all claims arising under any foreign, federal, state and local laws including, without limitation . . . the False Claims Act." (Id. at 3). The Severance Agreement provided Higgins with at least 21 days to consider the terms of the Agreement and seven days to revoke her consent after signing, and further advised Higgins of her right to consult with an attorney prior to signing the Agreement. (Id. at 1, 7). The Agreement also contained, in bold, all-capital letters just above the signature lines, the following:

> **THE UNDERSIGNED HAVE CAREFULLY READ THIS SEVERANCE AGREEMENT AND HAVE NOT BEEN COERCED INTO SIGNING IT; THEY UNDERSTAND ITS CONTENTS AND THEY FREELY AND VOLUNTARILY AGREE TO ABIDE BY ITS TERMS.**

(Id. at 7). Higgins signed the Severance Agreement on July 15, 2011 — 22 days after her resignation. (Id.; Doc. # 88 at ¶ 183).

**B. Whether the Severance Agreement is Void as Against Public Policy**

Higgins first attacks the Severance Agreement as against public policy and, therefore, legally unenforceable. (Doc. # 113 at 8). Higgins claims that the language of the waiver and release contained in the Severance Agreement seeks to extinguish her right to bring a case under the FCA, and "it is in the public interest that fraud against the Government be exposed and prosecuted by the Department of Justice." (Id.).

Although the Eleventh Circuit has not had cause to consider this question, the Tenth Circuit has rejected the argument that "the policy of the FCA to protect an employee from retaliation for bringing forward information about fraud against the government outweighs a private release." VanLandingham v. Grand Junction Reg'l Airport Auth., 603 F. App'x 657, 661 (10th Cir. 2015). The Tenth Circuit drew a distinction between qui tam actions brought by a private person on behalf of the government, which under 31 U.S.C. § 3730(b)(1) "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting," and the retaliation provision of the FCA, which "does not have a similar requirement." Id.

Based on this difference, the Tenth Circuit upheld the district court's ruling that the FCA "does not preclude [the plaintiff's] waiver of her private retaliation claim." Id.; see also Brown v. City of S. Burlington, 393 F.3d 337, 346 (2d Cir. 2004) (drawing a distinction between the public-benefit provisions of the FCA and the retaliation provision).

Another Florida district court reached a similar conclusion where a release discharged "any and all" claims the plaintiff might have arising out of his employment with the defendant. United States ex rel. Keeler v. Eisai, Inc., Case No. 09-22302-CIV-UNGARO, 2011 WL 13099033, at *3 (S.D. Fla. June 21, 2011). In that case, the court held that the plaintiff was barred from bringing his FCA retaliation claim, but the release did not bar the plaintiff's FCA qui tam claims. Id.; see also United States ex rel. Davis v. Lockheed Martin Corp., No. 4:09-CV-645-Y, 2010 WL 3239228, at *3-4 (N.D. Tex. Aug. 16, 2010) (holding that a written release could not be enforced to dismiss plaintiff's qui tam claims under the FCA without the consent of the Attorney General and the court but that the release did bar plaintiff's retaliation claims).

The cases Higgins relies on to support her argument are inapposite. In United States v. Northrop Corp., the Ninth

9

Circuit only considered the public policy implications of the release of qui tam claims and expressly refused to consider the FCA's anti-retaliation provision. See 59 F.3d 953, 963-65, 968 n.12 (9th Cir. 1995). Furthermore, in United States ex rel. Dillion v. St. Elizabeth Med. Ctr., Inc., No. 2:15-cv-13 (WOB-JGW), 2017 WL 3000662, at *4 (E.D. Ky. July 13, 2017), that court specifically found that the separation agreement entered into by the plaintiff barred her retaliation claim under the FCA and granted the defendant's motion to dismiss with respect to that claim.

The Court finds the reasoning of these cases persuasive. Here, Higgins has already settled her qui tam claims, and only her retaliation claim remains. Accordingly, the waiver and release contained in Higgins's Severance Agreement, if valid and enforceable, will serve to bar her retaliation claim under the FCA.[1]

---

[1] Higgins also argues that other provisions of the Severance Agreement, including the "Non-disparagement" and "Testimony" provisions, serve to render the Severance Agreement void and unenforceable. (Doc. # 113 at 8-9). But Higgins cannot credibly claim that these provisions stopped her from filing a qui tam action under the FCA because Higgins filed such an action, leading to a settlement between HealthSouth and the United States Department of Justice. (Id. at 6). Moreover, these provisions do not bear on Higgins's release of her private retaliation claim against HealthSouth.

## C. **Whether the Release is Valid and Enforceable**

Higgins alleges in her Amended Complaint that she raised concerns about HealthSouth's fraudulent billing practices within the company, and she was forced to resign because of those complaints. (Doc. # 88 at ¶¶ 165-87). Higgins therefore clearly knew of the existence of a potential retaliation claim at the time she signed the waiver. However, in both her Amended Complaint and her response in opposition to the Motion to Dismiss, Higgins argues that she was coerced or forced into signing the Severance Agreement. (Id. at ¶¶ 183-86; Doc. # 113 at 1, 5).

A waiver of remedial statutory rights must be scrutinized under the "totality of the circumstances" to ensure that the release was knowing and voluntary. Myricks v. Fed. Reserve Bank of Atlanta, 480 F.3d 1036, 1040 (11th Cir. 2007) (involving employment discrimination suit under Title VII). This Court's review of the totality of the circumstances involves several objective factors, including:

> the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

11

Id. (quoting Puentes v. United Parcel Serv. Inc., 86 F.3d 196, 198 (11th Cir. 1996)); see also VanLandingham, 603 F. App'x at 660 (applying similar factors to an individual FCA retaliation claim).

Applying these factors to the instant case, the Court finds that: (1) Higgins was educated, as she alleges that she has a Bachelor of Science degree and was a Director of Therapy Operations during her employment with HealthSouth (Doc. # 88 at ¶ 42); (2) the Severance Agreement gave Higgins 21 days to consider the Agreement before signing it and an additional seven days to revoke her consent (Doc. 104-1 at 1); (3) as will be more fully discussed below, the Severance Agreement plainly and clearly included all claims arising from Higgins's employment and her subsequent termination, including claims under the FCA (Id. at 3); (4) the Agreement advised Higgins of her right to consult with an attorney before executing the Agreement, which Higgins had time to do because she did not sign the Agreement until July 15, 2011, 22 days after her termination date of June 23, 2011 (Id. at 7; Doc. # 88 at ¶ 183); and (5) Higgins was given an additional two months of salary and insurance benefits and a lump sum payment for paid time off to which she would not otherwise

have been entitled (Doc. # 104-1 at 1-2). Here, the totality of the circumstances indicates that Higgins accepted valuable consideration in exchange for her knowing and voluntary relinquishment of the claims described in the Severance Agreement.

### D. Whether the Terms of the Severance Agreement are Ambiguous

Higgins argues that the Severance Agreement's language is ambiguous and must be construed against HealthSouth as the Agreement's drafter. (Doc. # 113 at 9-11). Specifically, she claims that the Agreement is ambiguous because it does not articulate whether the release of claims under the "False Claims Act" pertains to the federal FCA, the Texas False Claims Act, or both. (Id. at 10). Higgins argues that, given this ambiguity, the Court should find the invocation of the "False Claims Act" invalid or read the terms of the release to include only the Texas False Claims Act, thus putting her federal retaliation claim outside of the Agreement's terms. (Id. at 11).

The Severance Agreement indicates that Texas law governs the Agreement (Doc. # 104-1 at 6), and, accordingly, the Court will look to Texas law to construe the contract. See Vinnett v. Gen. Elec. Co., 271 F. App'x 908, 912 (11th Cir. 2008)

(explaining that federal courts "use the applicable state's contract law to construe and enforce settlement agreements"). Under Texas law, an unambiguous contract will be enforced as written, and ordinarily the writing alone will be deemed to express the parties' intentions. Sun Oil Co. (Del.) v. Madeley, 626 S.W.2d 726, 728 (Tex. 1981). Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered into. Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).

A contract is not ambiguous if it can be given a certain or definite legal meaning or interpretation. Id. Ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable. Id.

While Texas law requires that a release must mention the claim to be effective, it does not require "that the parties anticipate and identify each potential cause of action relating to the release's subject matter." Chaplin v. NationsCredit Corp., 307 F.3d 368, 376 (5th Cir. 2002) (quoting Keck v. Nat'l Union Fire Ins. Co., 20 S.W.3d 692, 698 (Tex. 2000)).

Here, examining the Severance Agreement as a whole in light of the circumstances present when the contract was entered into, the Agreement plainly includes: "all claims arising out of, or relating to, Ms. Higgins' employment with the Company and the termination of Ms. Higgins' employment with the Company, including . . . **all claims arising under any foreign, federal, state and local laws including, without limitation . . . the False Claims Act**." (Doc. # 104-1 at 3 (emphasis added)). Thus, the Severance Agreement can be given a definite legal meaning and interpretation: by its plain terms, the Severance Agreement encompasses all claims arising under both state and federal law that are related to Higgins's employment with HealthSouth and her termination. Such broad language would encompass both the federal False Claims Act and the Texas False Claims Act. Accordingly, Higgins's retaliation claim under the FCA falls within the Agreement's unambiguous terms.

### E. Whether this Court Should Grant Higgins Leave to Further Amend Her Complaint

Finally, Higgins requests leave to file a second amended complaint in order to add a claim under the Texas False Claims Act. (Doc. # 113 at 11-12). Yet the Court fails to see how Higgins can amend her complaint to overcome the hurdle imposed

15

by the broad terms of the Severance Agreement. Any amendment would necessarily be futile and, thus, Higgins's claim for retaliation must be dismissed with prejudice and without leave to amend. See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1133 (11th Cir. 2019) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed.") (quotation marks omitted); see also Zuluaga v. Bank of Am., N.A., No. 8:17-cv-2543-T-33TGW, 2018 WL 2215606, at *1 (M.D. Fla. May 15, 2018) (denying plaintiff the opportunity to file a second amended complaint because "leave to amend at this juncture would be futile").

**F. Attorneys' Fees and Costs under 31 U.S.C. § 3730(h)**

As part of its Motion, HealthSouth also seeks to dismiss "those portions of Count II requesting attorneys' fees related to the [retaliation] claims made in Count I." (Doc. # 104 at 1). Count II of Higgins's Amended Complaint consists only of a demand for attorneys' fees and costs under 31 U.S.C. §§ 3730(d) and (h). (Doc. # 88 at ¶¶ 202-07).

In cases where the government does not proceed with an action, the FCA provides for awards to qui tam plaintiffs that include "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. §

16

3730(d)(2). The retaliation provision of the FCA also provides for relief in the form of "litigation costs and reasonable attorneys' fees." 31 U.S.C. § 3730(h)(2).

The Court is not convinced that a stand-alone request for attorneys' fees is a separate cause of action under the FCA. The statute itself does not provide for a separate cause of action for such fees. Rather, the language of Sections 3730(d) and (h) provide a remedy for plaintiffs in connection with substantive FCA claims. See 31 U.S.C. § 3730(d)(1), (d)(2) (entitling "qui tam plaintiffs" to an "[a]ward" and providing guidelines for distributing relators' share of the proceeds or settlement of an action and additionally providing for costs necessarily incurred and reasonable attorneys' fees and costs); Id. § 3730(h)(2) (setting forth the relief available to plaintiffs in connection with a retaliation claim). This remedy is available to Higgins through a motion seeking such attorneys' fees and costs, which Higgins has filed and the Court will rule upon in due course. Accordingly, Count II of Higgins's Amended Complaint is dismissed in its entirety with prejudice. This Court's Order will not serve to nullify or terminate Higgins's pending Motion for Attorneys' Fees (Doc. # 89), and the Court expressly reserves jurisdiction to rule on that motion.

Because it must dismiss Higgins's retaliation claim with prejudice, this Court further determines that she is not entitled to relief under 31 U.S.C. § 3730(h)(2), including her costs and attorneys' fees incurred in litigating the retaliation claim. While the statute does not specifically state that its remedies are available only to prevailing parties, the parties here have cited no case law to the contrary. See Miniex v. Houston Hous. Auth., No. 4:17-00624, 2019 WL 1675857, at *2 (S.D. Tex. Apr. 17, 2019) (stating in dicta that statutory remedies under Section 3730(h)(2) are available to successful FCA retaliation claimants); Thompson v. Quorum Health Res., LLC, No. 1:06-CV-168, 2010 WL 2044542, at *4 (W.D. Ky. May 21, 2010) (same).

This does not, however, impact Higgins's entitlement to costs and fees under Section 3730(d). See United States ex rel. Bisk v. Westchester Med. Ctr., No. 06cv15296-LAK-FM, 2016 WL 8254797, at *10 (S.D.N.Y. Aug. 5, 2016) (explaining that an award of attorneys' fees and costs under Section 3730(d) does not include attorneys' fees recoverable under Section 3730(h) because the statutory language suggests that the two provisions constitute "separate and distinct bases for a fee award").

As previously explained, Higgins has filed a motion in this Court seeking her attorneys' fees and costs under 31 U.S.C. § 3730(d), which is currently pending before the Honorable Anthony E. Porcelli, United States Magistrate Judge. (Doc. # 89). Therefore, Higgins is directed to supplement her Motion for Attorneys' Fees within 10 days of the date of this Order, explaining what portion of the requested fees, if any, were incurred in the litigation of her retaliation claim and therefore are not recoverable.

## IV. Conclusion

HealthSouth's Motion to Dismiss is granted. Higgins's Amended Complaint is dismissed with prejudice in its entirety. The Court will retain jurisdiction in order to resolve Higgins's Motion for Attorneys' Fees. (Doc. # 89).

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant HealthSouth Corporation's Motion to Dismiss (Doc. # 104) is **GRANTED.** The Amended Complaint is dismissed with prejudice in its entirety.

(2) The Clerk is therefore directed to close this case.

(3) The Court will retain jurisdiction to rule on Higgins's pending Motion for Attorneys' Fees (Doc. # 89). Higgins is directed to supplement her Motion for Attorneys' Fees

within 10 days of the date of this Order, explaining what portion of the requested fees, if any, were incurred in the litigation of her retaliation claim.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 28th day of August, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE